United States District Court

For the Northern District of California

1

2

3                        UNITED STATES DISTRICT COURT

4                        NORTHERN DISTRICT OF CALIFORNIA

5

6   MERRIWEATHER ROSE FRANKLIN,

7            Plaintiff,                    No. C 12-3503 PJH

8        v.                                **ORDER DENYING PLAINTIFF'S**
                                           **MOTION FOR SUMMARY JUDGMENT**
9   CAROLYN W. COLVIN, Acting              **AND GRANTING DEFENDANT'S**
    Commissioner of Social Security,       **CROSS MOTION FOR SUMMARY**
10                                         **JUDGMENT**
             Defendant.
11   _____/

12        Plaintiff Merriweather Rose Franklin ("Franklin") seeks judicial review of the

13   Commissioner of Social Security's ("Commissioner") decision denying her claim for

14   disability benefits pursuant to 42 U.S.C. § 405(g).  This action is before the court on the

15   parties' cross-motions for summary judgment.  Having read the parties' papers and the

16   administrative record, and having considered the relevant legal authority, the court DENIES

17   Franklin's motion for summary judgment, GRANTS the Commissioner's cross-motion for

18   summary judgment, and AFFIRMS the Commissioner's final decision to deny benefits.

19                                **BACKGROUND**

20        Franklin protectively filed an application for supplemental security income ("SSI")

21   benefits on January 29, 2010.[1]  Administrative Record ("AR") 15.  Franklin alleged she

22   suffered from a combination of physical and mental disabilities that rendered her unable to

23   undertake work activities on a regular and continuous basis.  Franklin claimed she had

24   been disabled since June 3, 2009.  AR 15.  The Commissioner denied Franklin's

25

26   _____

27        [1]      Franklin filed an earlier application for benefits which was denied in a decision
     dated June 3, 2009, in which the ALJ found the claimant "not disabled and capable of
28   engaging in less than a full range of light work."  AR 15.  On October 27, 2010, the Appeals
     Council denied the claimant's request for review of the June 2009 decision.  Id.

1   application initially on May 11, 2010, and again, upon reconsideration, on September 1,

2   2010.  AR 15, 84, 93.

3       Franklin filed a request for a hearing on September 14, 2010.  AR 15.  On April 8,

4   2011, a hearing was conducted before an administrative law judge ("ALJ").  Id.  Franklin

5   appeared and testified at the hearing.  Id.  She was represented by her attorney, David J.

6   Linden.  Id.  In a subsequent decision dated April 28, 2011, the ALJ found that Franklin was

7   "not disabled" within the meaning of the Social Security Act ("the Act").  Id.

8       On May 13, 2011, Franklin requested review by the Appeals Council of the

9   unfavorable ALJ decision.  AR 11.  The Appeals Council denied the request for review,

10  making the ALJ's decision the final decision of the Commissioner.  On December 7, 2012,

11  Franklin brought this action seeking judicial review of the ALJ's decision pursuant to 42

12  U.S.C. § 405(g).

13      On December 7, 2012, Franklin filed a motion for summary judgment.  The

14  Commissioner filed its opposition and cross motion for summary judgment on February 4,

15  2013.  On February 15, 2013, Franklin filed a reply and opposition to the Commissioner's

16  cross-motion.  The matter is submitted on the papers.

17                  **STATUTORY AND REGULATORY FRAMEWORK**

18      The Social Security Act provides for the payment of disability insurance benefits to

19  people who have contributed to the social security system and who suffer from a physical

20  or mental disability.  See 42 U.S.C. § 423(a)(1).  A claimant is disabled "if he is unable to

21  engage in any substantial gainful activity by reason of any medically determinable physical

22  or mental impairment which can be expected to result in death or which has lasted or can

23  be expected to last for a continuous period of not less than twelve months."  42 U.S.C.

24  § 423(d)(1)(A); Sullivan v. Zebley, 439 U.S. 521, 524 (1990).  To evaluate whether a

25  claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step

26  analysis.  20 C.F.R. § 416.920.  The ALJ may terminate the analysis at any stage where a

27  decision can be made that the claimant is or is not disabled.  Pitzer v. Sullivan, 908 F.2d

28  502, 504 (9th Cir. 1990).

United States District Court

For the Northern District of California

1   At step one, the ALJ determines whether the claimant is engaged in any "substantial

2   gainful activity," which would automatically preclude the claimant from receiving benefits.

3   20 C.F.R. § 404.1520(a)(4)(i).  If not, at step two, the ALJ must determine whether the

4   claimant has a "severe" impairment or combination of impairments which significantly limits

5   his ability to do basic work activities.  20 C.F.R. § 404.1521; 20 C.F.R. § 416.921.  The

6   claimaint's own statement of symptoms alone will not suffice.  <u>See</u> 20 C.F.R. § 404.1508,

7   416.908.

8   Next, at step three, the ALJ must determine whether the impairment or combination

9   of impairments meets or equals an impairment listed in Appendix 1 and meets the duration

10  requirements.  20 C.F.R. § 404.1520(d), 416.920(d).  If the claimaint's impairment or

11  combination of impairments meets or equals an impairment in the Listing, the claimant is

12  presumed to be disabled and benefits are awarded.  <u>Id</u>.  If the claimant's condition does not

13  meet or equal a listing, the ALJ moves to step four to determine whether the claimant has

14  sufficient residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R.

15  § 404.1520(f), 416.920(f).

16  If the claimant can still perform past relevant work, the ALJ will make a finding of not

17  disabled.  20 C.F.R. § 404.1520(f), 416.920(f).  If the claimant cannot perform past relevant

18  work, the ALJ moves to the fifth step to determine whether the claimant can perform other

19  work that exists in significant number in the national economy, taking into consideration the

20  claimant's RFC, age, education and past work experience.  20 C.F.R. § 404.920(a)(4)(v).  If

21  the claimant can make an adjustment to other work, the ALJ will find the claimant not

22  disabled.  <u>Id</u>.

23  In steps one through four, the claimant has the burden to demonstrate a severe

24  impairment and an inability to engage in his or her previous occupation.  <u>Parra v. Astrue</u>,

25  481 F.3d 742, 746 (9th Cir. 2007).  Then, if the analysis proceeds to step five, the burden

26  shifts to the Commissioner to demonstrate that the claimant can perform other work.  <u>Id</u>.;

27  20 C.F.R. § 404.920(a)(4)(v).

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ALJ's FINDINGS**

The ALJ concluded that Franklin was not disabled within the meaning of the Act. Beginning at step one, the ALJ found that Franklin had not engaged in any substantial gainful activity since January 29, 2010, the application date.  AR 17.

At step two, the ALJ determined that Franklin had the following severe physical impairments: shoulder pain possibly secondary to mild thoracic scoliosis, and sensorineural hearing loss.  Id.  The ALJ also found the following mental impairments: anxiety-related disorder, affective disorder, and borderline personality disorder.  Id.  The ALJ also found that Franklin suffered from renal stones and fibromyalgia; however, these conditions were not severe.  AR 18.

At step three, the ALJ determined that Franklin did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18.  In evaluating the severity of Franklin's impairments, the ALJ considered whether Franklin satisfied the paragraph B criteria.[2]  The ALJ found that Franklin suffered from mild restriction on daily living activities and on concentration, persistence or pace, and moderate difficulties in social functioning.  AR 19. However, the ALJ found no "marked" limitations and no evidence of decompensation.  Id. Accordingly, the ALJ found that Franklin did not suffer from a listed impairment.  The ALJ further considered whether Franklin satisfied the paragraph C criteria.[3]  The ALJ found that there was no evidence showing a complete inability to function independently outside the area of her home.  AR 19.

---

[2]     In order to qualify for disability benefits under the Listing, both subsection A requirements ("paragraph A criteria") and the subsection B requirements ("paragraph B criteria") under 20 C.F.R. Part 404, Subpart P, Appendix 1 must be met.  Paragraph B criteria indicates the severity of the illness.  To satisfy the paragraph B criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily life; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme.  AR 18.

[3]     To satisfy the paragraph C criteria, evidence is required to show a complete inability to function independently outside the area of one's home.

4

**United States District Court**

For the Northern District of California

1    At step four, the ALJ assessed Franklin's RFC to consider whether it was sufficient

2   for her to perform her past work.  In the past, Franklin had worked as a cashier, a case aid

3   and overnight counselor, a dog washer, a salesperson and a barista.  AR 23.  The ALJ

4   found

5           [Franklin] has the residual functional capacity to perform light work as
            defined in 20 C.F.R. 416.967(b), except she requires a sit-stand option
6           and can only occasionally stoop and crouch . . . is limited to frequent
            overhead reaching with her non-dominant, left-upper extremity . . .
7           should not engage in work requiring fine hearing or public interaction
            . . . [and] should [engage in] work requiring only infrequent contact with
8           co-workers and supervisors. . . . Finally, the claimant retains the
            abilities to engage in at least simple, repetitive tasks equating to
9           unskilled work.

10  AR 20.  When determining Franklin's RFC, the ALJ considered Franklin's symptoms in light

11  of the objective medical evidence, opinion evidence and other evidence.  AR 20.  In doing

12  so, the ALJ applied a two-step process: 1) the ALJ determined whether there was an

13  underlying medically determinable physical or mental impairment that could reasonably be

14  expected to produce Franklin's pain or other symptoms; and 2) the ALJ evaluated the

15  intensity, persistence and limiting effects of Franklin's symptoms to determine the extent to

16  which they limited her functioning.  AR 20-21.  Whenever certain pain or symptom

17  statements were not substantiated by objective medical evidence, the ALJ made findings

18  as to the credibility of such statements.  AR 21.

19      The ALJ found some of Franklin's symptom statements to be unreliable because

20  Franklin lacked credibility.  The ALJ concluded that Franklin's "medically determinable

21  impairments could reasonably be expected to cause the alleged symptoms; however,

22  [Franklin's] statements concerning the intensity, persistence and limiting effect of these

23  symptoms are not credible to the extent they are inconsistent with the above residual

24  functional capacity assessment."  AR 23.  In support, the ALJ noted from Franklin's

25  testimony that her pain from her lumbar spine was improving.  AR 21.

26      The ALJ found that the medical evidence did not support a finding of disability.  For

27  her alleged physical disabilities, the ALJ gave great weight to the internal medicine

28  evaluation by the examining physician, Dr. Rose Lewis, because her "assessment [was]

United States District Court

For the Northern District of California

1    consistent with her findings on the examination, the evidence as a whole, and the previous

2    decision . . . ."  AR 21, 326.  She assessed that Franklin could "engage in less than a full

3    range of light activity."  AR 21.  Weight was also given to the two concurring assessments

4    by state agency physicians.  See AR 338-345 (physical RFC assessment and case

5    analysis by Dr. Amon).

6         As for the alleged mental disabilities, the ALJ gave little weight to the psychiatric

7    evaluation by the examining physician, Dr. Zipperle, because her assessment was based

8    "primarily, if not solely, . . . on [Franklin's] subjectively reported symptoms and limitations."

9    AR 22, 332-337.  Moreover, her assessment was not consistent with the record.  AR 22.

10        Weight was given to the assessments of the state agency psychological consultants,

11   Drs. Valdez and Sheehy.  The ALJ noted

12             [Dr. Valdez] determined in April 2010 that schizophrenia,
             depressive disorder, post-traumatic stress disorder (PTSD), a
13             pain disorder, borderline personality disorder, and alcohol
             dependence in remission caused mild restrictions in [Franklin's]
14             activities of daily living, moderate difficulties in maintaining
             social functioning, mild difficulties in maintaining concentration,
15             persistence, or pace, and no episodes of decompensation.

16   AR 22 (citing AR 343-345, 354-367, 368-371).  The ALJ further noted Dr. Valdez's

17   observation that Dr. Zipperle's assessment was based on a one-time evaluation of

18   Franklin's self-reported symptoms.  AR 22.  Additionally, Dr. Valdez found that "[Franklin]

19   reported a longer and longer list of symptoms and problems, but that it was not clear that

20   she was receiving any psychotherapy."  AR 22.  In support of Dr. Valdez's assessment, the

21   ALJ noted that in August 2010, another State agency psychological consultant affirmed Dr.

22   Valdez's initial RFC determination.  AR 22 (citing AR 424-427).

23        The treating physician, Dr. Tamar Seiver's assessment was given some weight to

24   the extent it was supported by the record.  AR 22.  Although "Dr. Seiver's statement could

25   be construed to identify greater limitations than that of [Franklin's RFC]," the ALJ found that

26   greater limitations were not supported by treatment records or other evidence, except

27   Franklin's subjective reports.  AR 23.  In addition, the ALJ noted that Franklin and her

28

United States District Court

For the Northern District of California

1   mother's testimony showed improvement in Franklin's condition since the last decision in

2   June 2009 when Franklin was found to be not disabled.  AR 23.

3        After determining Franklin's RFC, the ALJ assessed whether Franklin could perform

4   any past relevant work.  In doing so, the ALJ concluded that Franklin was unable to perform

5   past relevant work, because her past work required "exertional activity inconsistent with the

6   residual functional capacity above, or require[d] the ability to perform more than unskilled

7   work, or require[d] interaction with the public."  AR 23.

8        Upon determining at step four that Franklin could not perform his past work, the ALJ

9   then proceeded to step five.  The ALJ determined that, considering Franklin's age,

10  education, work experience, and RFC, there were jobs that existed in significant numbers

11  in the national economy that Franklin could perform.  In support, the ALJ noted that

12  Franklin was 33 years old on the alleged onset date, was able to communicate in English,

13  and had at least a high school education.  AR 24.  The ALJ inquired of the Vocational

14  Expert ("VE"), Mr. Davis, as to whether jobs existed in the national economy for an

15  individual with Franklin's age, education, work experience and RFC.  Id.

16       The VE responded positively, testifying that Franklin "could perform the

17  requirements of about fifty per cent of all light, unskilled jobs, and eighty per cent of all

18  unskilled jobs."  Relying on the VE's testimony, the ALJ concluded that Franklin could

19  perform other work that existed in significant number in the national economy.  AR 24.

20  Accordingly, the ALJ found Franklin "not disabled."  Id.

21                              **STANDARD OF REVIEW**

22       Judicial review of the Commisioner's final decision to deny disability benefits is

23  permitted under 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the ALJ's

24  findings are "supported by substantial evidence and if the [ALJ] applied the correct legal

25  standards."  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citing Tackett v.

26  Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999)).  Substantial evidence "'means such relevant

27  evidence as a reasonable mind might accept as adequate to support a conclusion.'"

28  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (quoting

                                         7

1   Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  The

2   evidence must be "'more than a mere scintilla,'" but may be "'less than a preponderance.'"

3   Id. (quoting Desrosiers, 846 F.2d at 576).

4        The court is required to review the administrative record as a whole, weighing both

5   the evidence that supports and detracts from the ALJ's conclusion.  McAllister v. Sullivan,

6   888 F.2d 599, 602 (9th Cir. 1989).  If the evidence is susceptible to more than one rational

7   interpretation, the court must uphold the ALJ's decision if they are "supported by inferences

8   reasonably drawn from the record."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

9   2008); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

10        The court may not reverse an ALJ's decision on account of an error that is harmless.

11   Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "'[T]he burden of showing that an

12   error is harmful normally falls upon the party attacking the agency's determination.'"  Id.

13   (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

14                                    **ISSUES**

15        Franklin seeks reversal of the ALJ's decision on the following grounds:

16        (1)    The ALJ improperly rejected opinions of Dr. Zipperle and Dr. Seiver;

17        (2)    the ALJ erred in failing to address Franklin's stress intolerance;

18        (3)    the ALJ improperly evaluated Franklin's credibility;

19        (4)    the ALJ erred in rejecting the lay witness testimony;

20        (5)    the ALJ failed to include all of Franklin's limitations in the RFC findings;

21        (6)    the appropriate remedy is remand for payment of benefits.

22        Franklin only appeals from the denial of benefits for mental disability and does not

23   contest the ALJ's physical RFC findings.  Pl's Reply at 9.

24                                 **DISCUSSION**

25   **A.    Opinions of Dr. Zipperle and Dr. Seiver**

26        **1.    Legal Standard**

27        There are three types of medical opinions (treating, examining, and non-examining)

28   and each type is accorded different weight.  See Valentine, 574 F.3d at 692; Lester v.

                                         8

United States District Court
For the Northern District of California

1    <u>Chater</u>, 81 F.3d 821, 830-831 (9th Cir. 1996).  Generally, the opinion of a treating physician

2    is given the most weight, and the opinion of an examining physician is given more weight

3    than a non-examining physician.  <u>See</u> <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219,

4    1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'")

5    (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir.1988)); <u>Lester</u>, 81 F.3d at 830.

6          If a treating or examining opinion is contradicted by another physician's opinion, an

7    ALJ may reject the opinion of the treating or examining physician only if the ALJ provides

8    "specific and legitimate reasons" supported by substantial evidence in the record.  <u>Lester</u>,

9    81 F.3d at 830 (citing <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)).

10         If a treating physician's opinion is not contradicted by another doctor's opinion, it can

11   only be rejected for "clear and convincing" reasons.  <u>Lester</u>, 81 F.3d at 830; <u>Baxter v.</u>

12   <u>Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991).

13         **2.    Dr. Zipperle's Opinion**

14         Franklin challenges the ALJ's failure to give sufficient weight to the opinion of her

15   examining physician, Dr. Zipperle, who assessed that Franklin lacked the abilities and

16   attitudes necessary to do most jobs.  AR 22 (citing AR 336).  The ALJ did not entirely reject

17   Zipperle's assessment; rather, the ALJ gave the opinion limited weight in concluding that

18   Franklin was limited to infrequent contact with co-workers and supervisors and no public

19   interaction.  AR 20, 22.  The ALJ's opinion discussed Dr. Zipperle's assessment as follows:

20                  Little weight is given to Dr. Zipperle's assessment because it is
                    primarily, if not solely, based on the claimant's subjectively
21                  reported symptoms and limitations.  The record does not
                    support the claimant's reported symptoms and limitations.
22
                    The consultant [Dr. Valdez] observed that schizophrenia, PTSD,
23                  a pain disorder, and a personality disorder were based on Dr.
                    Zipperle's one-time evaluation, which was based on the
24                  claimant's self-reported symptoms.  [AR 359-61.]  She also
                    noted that the claimant reported a longer and longer list of
25                  symptoms and problems, but that it was not clear that she was
                    receiving any psychotherapy.  [AR 366.]  In August 2010,
26                  another State agency psychological consultant [Dr. Sheehy]
                    affirmed the initial determination.   [AR 424-427.]
27
     AR 22.
28

9

**United States District Court**
For the Northern District of California

1    Franklin contends that the ALJ failed to state clear and convincing reasons to reject

2  Zipperle's opinion. Pl's Mot. at 11. Franklin cites <u>Ryan v. Comm'r of Soc. Sec. Admin.</u>,

3  where the court held that the ALJ improperly rejected an examining doctor's opinion for

4  being "based too heavily on [the plaintiff's] 'subjective complaints'" and unsupported by the

5  treating doctor's records. 528 F.3d 1194, 1199 (9th Cir. 2008). The court in <u>Ryan</u> held that

6  "an ALJ does not provide clear and convincing reasons for rejecting an examining

7  physician's opinion by questioning the credibility of the patient's complaints where the

8  doctor does not discredit those complaints and supports his ultimate opinion with his own

9  observations." <u>Id</u>. at 1199-1200.

10    Here, unlike the examining doctor's uncontradicted opinion in <u>Ryan</u>, Dr. Zipperle's

11  assessment of Franklin's mental condition was contradicted by Drs. Valdez and Sheehy's

12  opinions. AR 22. The ALJ was therefore required to state specific and legitimate reasons

13  to reject Zipperle's opinion, not clear and convincing reasons. <u>Lester</u>, 81 F.3d at 830.

14    The ALJ stated two reasons to give limited weight to Zipperle's diagnosis:

15  (1) Zipperle's assessment was based primarily on Franklin's account of her subjectively

16  reported symptoms and limitations, and (2) the record did not support Franklin's reported

17  symptoms and limitations. AR 22.

18         **a.    Subjective Reports**

19    First, the ALJ may disregard medical opinions when they are based on discredited

20  subjective complaints. <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989). The ALJ did

21  not find Franklin's subjective complaints to be fully credible, as discussed further below.

22  <u>See</u> AR 23 ("the claimant's statements concerning the intensity, persistence and limiting

23  effects of these symptoms are not credible to the extent they are inconsistent with the

24  above residual functional capacity assessment"). Thus, the ALJ reasonably rejected Dr.

25  Zipperle's assessment where the findings noted in her evaluation were primarily based on

26  Franklin's subjective complaints. For example, Zipperle noted that "[Franklin's] prognosis is

27  poor, due to her auditory hallucinations; visual hallucinations; her feeling that people are

28  talking about her and are after her, and that people would really hurt her; suicidal ideations;

1    and her binging and purging eating disorder." AR 22.   These conditions were based on

2    Franklin's self reported symptoms.

3          Dr. Zipperle made observations about Franklin's general appearance, attitude and

4    behavior during her mental status examinations.  AR 335.  During the examination, Zipperle

5    also performed a series of intellectual functioning tests.  AR 335.  In assessing Franklin's

6    ability to work, however, Dr. Zipperle relied primarily on Franklin's subjectively reported

7    symptoms and limitations:

8          The claimant could probably manage her own money.

9          The claimant could perform simple and repetitive tasks.

10          She would have difficulty with detailed and complex tasks.

11          She cannot accept instructions from supervisors or interact well
           with coworkers and the public.

12

13          She would not need special or additional instruction; however,
           maintaining a regular work attendance would not be possible for
           her as her psychiatric condition would interrupt her work day.

14

15          She could not deal adequately with stress encountered in the
           workplace.

16    AR 336.  Dr. Zipperle did not cite her own observations in assessing Franklin's limitations.

17    In Ryan, by contrast, the treating doctor relied on his own clinical observations during his

18    mental status examination to support his conclusion that Ryan was incapable of

19    maintaining a regular work schedule: "Behavior and mannerisms are somewhat odd.  She

20    has rapid speech. . . . She is easily agitated and appears to be very angry[;] anxious,

21    distraught, nervous, shaky, and edgy."  Ryan, 528 F.3d at 1199.  Here, there is substantial

22    evidence in the record to support the ALJ's finding that Dr. Zipperle's assessment did not

23    rely on evidence or observations other than Franklin's self-reported symptoms to conclude

24    that Franklin would not be able to perform most jobs.  AR 22.

25              **b.    Disabling Symptoms Not Supported by Record**

26          Second, the ALJ determined that Dr. Zipperle's opinion, i.e., that Franklin lacked the

27    abilities and attitudes necessary to do most jobs, was not supported by the record.  AR 22.

28    The ALJ is not required to accept a treating doctor's opinion that is not supported by clinical

United States District Court

For the Northern District of California

1   evidence and is based on the claimant's subjective complaints. Bayliss v. Barnhart, 427

2   F.3d 1211, 1217 (9th Cir. 2005) (citing Thomas v. Barnhart, 278 F.3d 947, 957 (9th

3   Cir.2002) ("The ALJ need not accept the opinion of any physician, including a treating

4   physician, if that opinion is brief, conclusory, and inadequately supported by clinical

5   findings.")). See also Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223 (9th Cir.

6   2010) (finding specific and legitimate reasons for rejecting the treating physician's opinion

7   to the extent that it suggested that the claimant was disabled where the record did not

8   support the claim and the opinion was "'based almost entirely on the claimant's self

9   reporting[,]' . . . without any independent analysis or diagnosis . . . [or] 'objective findings to

10  substantiate' a claim" of disability).

11       Franklin does not point to medical records, other than opinion evidence, to show that

12  the ALJ's decision was not supported by substantial evidence.  Franklin contends,

13  however, that "the ALJ also improperly relied on the opinions of the state agency non-

14  examining physicians over those of Dr. Zipperle." Pl's Mot. at 11.  Franklin argues that

15  "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence

16  that justifies the rejection of the opinion of either an examining physician or a treating

17  physician." Id. (citing Lester, 81 F.3d at 830-831).  In Lester, the court held that "[t]he

18  opinion of a non-examining physician cannot by itself constitute substantial evidence that

19  justifies the rejection of the opinion of either an examining physician or a treating

20  physician." 81 F.3d at 830-31.  The court in Lester, recognized, however, that the ALJ may

21  rely on a non-examining doctor's opinion with something more, such as laboratory test

22  results or the claimant's testimony, to reject a treating doctor's opinion. Id. at 831 (citing

23  Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989); Andrews, 53 F.3d at 1043;

24  Roberts v. Shalala, 66 F.3d 179 (9th Cir. 1995)).

25       In weighing the opinion evidence, the ALJ did not merely cite the non-examining

26  doctors' opinions, but also noted Dr. Valdez's observation that Dr. Zipperle's diagnoses of

27  schizophrenia, PTSD, a pain disorder, and a personality disorder were based on Dr.

28  Zipperle's one-time evaluation, which itself was based on Franklin's self-reported

United States District Court

For the Northern District of California

1   symptoms.  AR 22 (citing AR 359-61).  Dr. Valdez's report took into consideration Dr.

2   Zipperle's assessment.  AR 366 ("Vendor [Dr. Zipperle] generates an extensive list of DX

3   based largely on clmt's self-report.  MSS, likewise, is significantly limiting but apparently

4   based largely on clmt's self-report.").  Dr. Valdez also noted the absence of medical records

5   to support Franklin's subjective complaints: "[u]nfortunately, the only Y MER [psychological

6   medical evidence of record] for [Franklin] since 2007 are the [psychological consultative

7   examinations].  [Franklin] reports she sees [a psychiatrist] but no [medical evidence] is

8   returned from this source who indicates they have no records for this [claimant]."  AR 366.

9   Dr. Valdez's assessment included detailed consultant's notes to explain her check-box

10  summary of findings, and was not merely a standardized check-box form review.  See AR

11  366.  Cf. Ryan, 528 F.3d at 1201-02 (check-box assessment form completed by non-

12  examining physicians contained no supporting explanation for bare conclusions and did not

13  outweigh other evidence in the record).

14       The ALJ summarized Dr. Valdez's findings as noting that Franklin "reported a longer

15  and longer list of symptoms and problems, but that it was not clear that she was receiving

16  any psychotherapy."  AR 22 (citing AR 366).  Dr. Valdez's finding was thus consistent with

17  the ALJ's own finding that the record did not support Franklin's self-reported symptoms and

18  limitations.  The ALJ found the record did not support Franklin's reported symptoms and

19  limitations, on which Dr. Zipperle's assessment was based, providing a specific and

20  legitimate reason to discount Dr. Zipperle's opinion that Franklin was unable to perform

21  most jobs.

22       **3.   Dr. Seiver**

23       Franklin also challenges the ALJ's rejection of the opinion of her treating psychiatrist,

24  Dr. Seiver, in assessing her mental RFC.  The ALJ's opinion discussed Dr. Seiver's

25  assessment as follows:

26           A treating source, psychiatrist Tamar Seiver, MD, wrote in August 2010
             that the claimant's diagnoses were major depression, eating disorder,
27           anxiety disorder, and borderline personality disorder.  [AR 435.]  Dr.
             Seiver wrote that she had a very limited ability to adapt to change and
28           stress in the workplace, and to interact with colleagues and

13

United States District Court

For the Northern District of California

1
2
3
> supervisors.  [AR 434.]  He assessed a fair prognosis for improvement.
> [AR 435.]  Dr. Seiver's assessment and opinions are given some
> weight, particularly where supported by the record.  The residual
> functional capacity above is not entirely inconsistent with his
> assessment.

4    AR 22.  Franklin contends that the ALJ failed to specify how much weight was actually

5    assigned to Seiver's opinion regarding Franklin's psychological assessment, and that the

6    ALJ opinion "provides no insight into what evidence the ALJ considered either supported or

7    failed to support Dr. Seiver's opinions."  Pl's Mot. at 13.  In opposition, the Commissioner

8    argues that "[t]he ALJ properly accorded weight to Dr. Seiver's opinion to the extent it was

9    consistent with and supported by the record."[4]  Def's Opp./X-Mot. at 5.

10            In assessing Franklin's current level of functioning, Dr. Seiver opined on Franklin's

11   limitations as follows:

12
13
14
15
16
> A.    Present Daily Activities: "independent but low level of
>       functioning"
> B.    Social Functioning: "minimal social contacts"
> C.    Concentration and Task Completion: "decreased ability due
>       to depression + anxiety"
> D.    Adaptation to Work or Work-like Situations: "very limited
>       ability to adapt to change + stress in the work place,
>       interaction w/ colleagues + supervisors"

17   AR 433-34.  Dr. Seiver's evaluation did not state an opinion that Franklin would be unable

18   to work due to her mental disorders.  The ALJ found that Dr. Seiver's assessment was not

19   entirely inconsistent with the mental RFC determined by the ALJ, i.e., that Franklin should

20   not engage in work requiring public interaction, should seek work requiring only infrequent

21   contact with co-workers and supervisors, and retained the abilities to engage in at least

22   simple, repetitive tasks equating to unskilled work.  AR 20, 22.  However, the ALJ rejected

23   Dr. Seiver's opinion to the extent that his opinion "could be construed to identify greater

     limitations" on Franklin's RFC.  AR 23.

24
25
26
27
28
---

     [4]    The Commissioner erroneously cites Title 20, Section 416.927(d)(4) of the Code
of Federal Regulations. The relevant authority is 20 C.F.R. Section 416.927(c)(4) ("Generally,
the more consistent an opinion is with the record as a whole, the more weight we will give to
that opinion.").

United States District Court

For the Northern District of California

1        Neither party identifies the applicable standard that the ALJ was required to apply in

2    rejecting the opinion of Dr. Seiver, a treating doctor.  See Pl's Mot. at 13 ("the ALJ's

3    rejection of Dr. Seiver's opinions fails to meet **either** the 'clear and convincing' standard [to

4    reject an uncontradicted opinion] **or** the 'specific and legitimate reasons that are supported

5    by substantial evidence in the record' standard" to reject an opinion contradicted by another

6    doctor's opinion) (emphasis added).  The record demonstrates that Dr. Seiver's opinion

7    differed from Dr. Valdez and Dr. Sheehy's assessment of Franklin's ability to interact with

8    colleagues and supervisors: Dr. Valdez and Dr. Sheehy determined that Franklin was

9    moderately limited, and thus required a setting with limited social contact, whereas Dr.

10   Seiver opined that Franklin required "minimal social contact" and had "very limited ability" to

11   interact with colleagues and supervisors.  AR 366, 434.  The ALJ concluded that Franklin

12   was limited to infrequent contact with co-workers and supervisors and no public interaction.

13   AR 20.  Dr. Valdez and Dr. Sheehy's opinions contradicted Dr. Seiver's opinion about the

14   severity of Franklin's limitations, but both the Valdez and Sheehy opinions were issued

15   before Dr. Seiver issued his opinion, dated August 11, 2010, and did not address Dr.

16   Seiver's contrary opinion.  Furthermore, the ALJ did not cite medical opinions that

17   contradicted Dr. Seiver's assessment of Franklin's mental condition to the extent that Dr.

18   Seiver's opinion could be construed to support greater functional limitations.  Because Dr.

19   Seiver's opinion was uncontradicted on this record, the ALJ was required to state clear and

20   convincing reasons that are supported by substantial evidence to reject Dr. Seiver's opinion

21   as a treating doctor.  Lester, 81 F.3d at 830-31.

22       The ALJ gave clear and convincing reasons to reject Dr. Seiver's assessment that

23   Franklin had limitations beyond the RFC that the ALJ determined to be supported by the

24   objective evidence.  The ALJ stated that "the claimant has not generally received the type

25   of medical treatment one would expect for a totally disabled individual."  AR 23.  The ALJ

26   further stated that "[t]he record really does not contain any opinions from treating

27   physicians indicating that the claimant is disabled or even has limitations greater than those

28   determined in this decision."  Id.  The ALJ also stated that to the extent that Dr. Seiver's

United States District Court

For the Northern District of California

1  opinion could be construed to identify greater limitations, these limitations "are not

2  supported by treatment records or any other evidence, except for the claimant's subjective

3  reports."  AR 23.

4       In reporting evidence of anxiety, depression or other affective disorder, Dr. Seiver

5  noted "depressed[,] anxious[,] panic sx, disrupted sleep.  picking at herself - at her fingers.

6  feels like someone choking her.  [gaining] weight.  had thought to cut herself w/ razors -

7  brought razors in + disposed of them."  AR 433.  Dr. Seiver's opinion does not indicate that

8  he observed these conditions himself; rather, Dr. Seiver made the following observations

9  about Franklin:  "overall she is compliant w/ apts + does not need assistance in keeping

10 them.  generally - appropriate dress manner + hygiene.  sometimes can be slightly

11 dissheveled [sic].  good eye contact.  forthcoming."  AR 431.  The ALJ determined that Dr.

12 Seiver's opinion relied on Franklin's subjective reports which the ALJ found to be

13 discredited.  AR 23.  Dr. Seiver's opinion as to Franklin's decreased or "very limited"

14 abilities did not refer to Dr. Seiver's own independent observations, in contrast to the

15 psychiatric evaluation credited in Ryan, where the treating psychiatrist recorded not only

16 the symptoms relayed by the claimant, but also recorded his own clinical observations in

17 support of his opinion that the claimant would not be able to complete a regular work week.

18 See Ryan, 528 F.3d at 1199-1200 ("an ALJ does not provide clear and convincing reasons

19 for rejecting an examining physician's opinions by questioning the credibility of the patient's

20 complaints where the doctor does not discredit those complaints and supports his ultimate

21 opinion with his own observations.").

22      Furthermore, Dr. Seiver did not directly state or opine that Franklin could not work

23 due to her mental condition, unlike Ryan, where the examining physician "opined that Ryan

24 would be unable to complete a regular work week due to her mental impairments."  528

25 F.3d at 1199.  On this record, the ALJ provided clear and convincing reasons, supported by

26 substantial evidence, to reject Dr. Seiver's opinion to the extent that it "could be construed

27 to identify greater limitations," where Dr. Seiver himself did not opine that Franklin was

28 unable to work on a regular and continuous basis.

**B.      Franklin's Ability to Tolerate Stress**

Franklin argues that the ALJ erred by failing to address her stress intolerance.  Pl's Mot. at 14.  Franklin contends that Drs. Zipperle and Seiver's opinions, as well as Franklin and her mother's testimony, demonstrated her limited ability to handle stress.  Id.  Franklin emphasizes that because stress is "highly individualized. . ., the mentally impaired may have difficulty meeting the requirements of even so-called 'low stress' jobs."  Id. at 15 (citing Social Security Ruling 85-15).  Thus, Franklin contends that the ALJ committed legal error by failing to address Franklin's ability to tolerate stress and improperly finding Franklin to be able to perform other work.  Id. at 15.

Franklin cites Social Security Ruling ("SSR") 85-15, which states that a person's ability to cope with stress in the workplace is a "highly individualized" condition that requires "thoroughness in evaluation on an individualized basis."  See Perkins v. Astrue, 2012 WL 4755402 at *2 (C.D. Cal. Oct. 5, 2012) (quoting SSR 85-15).  Franklin also cites Lancellotta v. Sec. of HHS, 806 F.2d 284, 285 (1st Cir. 1986), where the court cited SSR 85-15 to hold that the ALJ failed to make sufficient findings on stress, in support of her argument that the ALJ failed to account for Franklin's inability to handle stress in the RFC finding.

SSR 85-15 requires that "[a]ny impairment-related limitations created by an individual's response to demands of work [ ] must be reflected in the RFC assessment."  SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A. 1985).  The Ninth Circuit has recognized, however, that SSR 85-15 was issued to clarify "policies applicable in cases involving the evaluation of solely nonexertional impairments."  Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995).  Thus, SSR 85-15 has no application to a claimant who claims both exertional and nonexertional impairments, as SSR 85-15 provides guidance only for cases in which the claimant asserts "solely nonexertional impairments."  Id. (citing SSR 85-15).

The Commissioner fails to address Franklin's contention that the ALJ did not follow SSR 85-15.  The court determines, however, that because Franklin asserted both exertional and nonexertional impairments, SSR 85–15 does not apply.  See Sandgathe v.

17

United States District Court

For the Northern District of California

1    Chater, 108 F.3d 978, 980–81 (9th Cir. 1997) (holding SSR 85–15 was inapplicable

2    because the claimant had exertional and nonexertional impairments).

3         Here, the record demonstrates that the ALJ gave clear and convincing reasons to

4    reject Dr. Seiver's opinion that Franklin had "a very limited ability to adapt to change and

5    stress in the work place." AR 22 (citing AR 434). As discussed above, the ALJ rejected Dr.

6    Seiver's opinion to the extent that it was unsupported by treatment records or other

7    evidence. AR 22-23. See Bayliss v. Barnhard, 427 F.3d 1211, 1217 (9th Cir. 2005). In

8    Bayliss, the court held that the ALJ did not err in failing to address the plaintiff's reaction to

9    stress because the ALJ properly considered "those limitations for which there was record

10   support that did not depend on Bayliss's subjective complaints." 427 F.3d at 1217. The

11   court in Bayliss further held, "[p]reparing a function-by-function analysis for medical

12   conditions or impairments that the ALJ found neither credible nor supported by the record is

13   unnecessary." Id. Similarly, here, the ALJ did not fail to consider Franklin's tolerance for

14   stress where he determined that "[t]he record really does not contain any opinions from

15   treating physicians indicating that the claimant is disabled or even has limitations greater

16   than those determined in this decision." AR 23.

17        With respect to other evidence cited by Franklin to show her inability to tolerate

18   stress, the record demonstrates that the ALJ found that such evidence was entitled to little

19   weight. The ALJ discounted Dr. Zipperle's opinion that Franklin "could not deal adequately

20   with stress encountered in the workplace," because it was primarily based on Franklin's

21   subjective complaints and was not supported by the record. AR 336. In her function report

22   dated February 24, 2010, Franklin stated, "[I can't handle stress] at all, I freak out, [have]

23   panic attacks, anxiety and anger which gets explosive." AR 211. Further, in her later

24   function report dated July 23, 2010, she stated that "[she] can't handle stress at all," and

25   that "[she] do[es] not cope well when there's change." AR 287. The ALJ found, however,

26   that Franklin was not credible, as discussed further below.

27        Franklin also argues that her mother, Heather Ann Hanan, testified about Franklin's

28   limited ability to tolerate stress. Pl's Mot. at 14-15. See AR 221 (in response to 3rd party

1  function report dated February 24, 2010, asking how well Franklin handles stress, Hanan

2  responded, "not well. She has very few self soothing skills that help with the physical pain

3  and almost none to help [with] interpersonal problems."); AR 276 (in response to the same

4  question in July 23, 2010 report, Hanan responded, "not well, rages at others, hurts

5  herself.").  The ALJ's opinion indicates that he considered Franklin's mother's testimony,

6  and accorded some weight to her statements, but discredited her testimony where it was

7  consistent with Franklin's discredited subjective complaints, as further discussed in Section

8  D, below.  AR 21, 23.

9          On this record, there was substantial evidence to support the ALJ's finding that

10  Franklin was not disabled and the ALJ did not err in giving little weight to the evidence

11  suggesting that Franklin was unable to tolerate stress.

12  **C.      Franklin's Credibility**

13          Franklin challenges the ALJ's determination that her testimony regarding the severity

14  of her symptoms lacked credibility.

15          If an ALJ finds that a claimant's testimony regarding the severity of his pain and

16  impairments is unreliable, the ALJ must give "specific, clear and convincing reasons"  for

17  rejecting the claimant's testimony.  Lengenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.

18  2007) (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  See also Robbins v.

19  Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of

20  malingering based on affirmative evidence thereof, he or she may only find an applicant not

21  credible by making specific findings as to credibility and stating clear and convincing

22  reasons for each.").

23          When weighing the claimant's credibility, the ALJ may consider factors such as the

24  following: "claimant's reputation for truthfulness, inconsistencies either in claimant's

25  testimony or between her testimony and her conduct, claimaint's daily activities, her work

26  record, and testimony from physicians and third parties concerning the nature, severity,

27  and effect of the symptoms of which claimant complains."  Thomas v. Barnhart, 278 F.3d

28  947, 958-59 (9th Cir. 2002) (quoting Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th

**United States District Court**

For the Northern District of California

1   Cir. 1997)) (internal marks omitted). "If the ALJ's credibility finding is supported by

2   substantial evidence in the record, [the court] may not engage in second-guessing." Id. at

3   959 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)).

4   　　　　Franklin argues that the ALJ failed to identify specific evidence which shows that

5   specific testimony is not credible. Pl's Mot. at 18. In making credibility determinations, the

6   ALJ must specifically identify the testimony he finds not to be credible and must explain

7   what evidence undermines the testimony. Holohan, 246 F.3d at 1208.

8   　　　　**1.　　Concern That Working Would "Ruin Her Case"**

9   　　　　Here, the ALJ gave specific, clear and convincing reasons for finding that Franklin's

10   inconsistent statements about her disabling impairments were not fully credible. First, the

11   ALJ cited medical reports showing that Franklin did not work for fear of being denied SSI

12   benefits. In September 2010, "[s]he informed her therapist [ ] that she had been denied

13   disability benefits for the fifth time; she explained that she knew she was disabled and that

14   if she worked now, it would ruin her case." AR 22 (citing AR 526). Franklin contends that

15   she is not a lawyer and that her statement "if I worked now it would ruin my case" has no

16   legal significance, emphasizing that "many disabled SSI applicants can work and still be

17   disabled." Pl's Reply at 6. However, this evidence that Franklin believed that working

18   would ruin her chances of obtaining SSI benefits was cited by the ALJ and supported the

19   ALJ's credibility determination.

20   　　　　**2.　　Doctor's Doubt About Franklin's Reason for Hospital Admission**

21   　　　　Second, the ALJ cited Franklin's hospital records dated February 2011: "The doctor

22   commented that the claimant told her that she had a pending SSI application; it was not

23   clear to the doctor whether the admission to the hospital had anything to do with the SSI

24   application." AR 22-23 (citing AR 447). Franklin contends that the doctor's speculation is

25   not substantial evidence, but the ALJ may properly consider Franklin's reputation for

26   truthfulness. Thomas, 278 F.3d at 958. Here, Dr. Ramanathan's observation that "Client

27   states that she has a pending SSI application [and] I am not clear whether this admission

28

**United States District Court**

For the Northern District of California

1   had anything to do with that application" reflects the doctor's own doubts about Franklin's

2   credibility.  AR 447.

3       **3.      Substance Abuse**

4       Third, the ALJ reviewed Franklin's substance abuse history, citing medical records in

5   February 2011 showing that she took medical marijuana for fibromyalgia and anxiety.  AR

6   23 (citing AR 449).  Franklin "also had a history of doing speed, cocaine, and heroin."  Id.

7   Noting Franklin's work history showing that she performed well at one of her longest held

8   jobs while she was free from the use of substances, the ALJ found that "[t]he record

9   strongly indicates that continued marijuana use deprives the claimant of the motivation to

10  comply with her psychiatrist's treatment plan."  Id.  The ALJ determined that "[a]ll of this

11  combined strongly suggests that the claimant's psychological impairments would impose

12  negligible limitations if she were to stop the use of marijuana and consistently comply with

13  treatment and medications."  Id.  Franklin argues that it would be unreasonable to stop the

14  use of medical marijuana, which currently assists with her fibromyalgia and anxiety

15  disorder, to improve another disorder.  Pl's Mot. at 20.  Franklin has not, however,

16  presented medical opinion evidence or other evidence in the record that marijuana is the

17  only treatment available for her fibromyalgia and anxiety.  On this record, substantial

18  evidence supports the ALJ's finding that Franklin's substance abuse history and continued

19  marijuana use discredited her subjective complaints of disabling mental impairments.

20      Franklin also challenges this finding on the ground that the ALJ failed to comply with

21  Social Security Ruling 82-59, which delineates the circumstances in which the

22  Commissioner can deny benefits on the basis that the claimant has failed to follow

23  prescribed treatment, including a requirement that "[t]he evidence of record discloses that

24  there has been refusal to follow prescribed treatment."  Ibarra v. Comm'r of Soc. Sec.

25  Admin., 92 F. Supp. 2d 1084, 1087 (D. Or. 2000) (citing SSR 82–59).

26      Franklin also contends that the ALJ failed to consider "whether or not Ms. Franklin

27  had good cause for failing to comply with any treatments," citing Byrnes v. Shalala, 60 F.3d

28  639, 641 (9th Cir. 1995).  Pl's Mot. at 20-21.  In Byrnes, the Commissioner argued on

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    appeal that the claimant's diabetes would have been controllable if he followed his doctors'

2    advice and quit smoking, but the court found that the ALJ did not make such

3    noncompliance findings in assessing the claimant's credibility.  60 F.3d at 641.  The court in

4    Byrnes did not therefore consider whether the ALJ made findings pursuant to 20 C.F.R.

5    § 404.1530, regulating denial of benefits for noncompliance with a prescribed treatment

6    program, which requires the ALJ to "examine the medical conditions and personal factors

7    that bear on whether [a claimant] can reasonably remedy" his impairment and must make

8    specific findings."  Id.

9         The Commissioner fails to address Franklin's arguments that the ALJ failed to

10   comply with SSR 82-59 or make specific findings on "the medical conditions and personal

11   factors that bear on whether a claimant can reasonably remedy his impairment."  Pl's Mot.

12   at 20-21 (citing Byrnes, 60 F.3d at 641).  The court determines, however, that SSR 82-59

13   and the regulations governing noncompliance with a treatment program are not applicable

14   here because Franklin was not denied benefits on the ground that she failed to follow a

15   prescribed treatment program.  Here, as in Byrnes, the ALJ did not make a finding that

16   Franklin was not complying with a prescribed treatment program, or that a prescribed

17   treatment would restore Franklin's ability to work.  See Byrnes, 60 F.3d at 641 ("we decline

18   to review the record to ascertain whether substantial evidence might support these findings

19   not made") (citation and internal quotation marks omitted).  Rather, the ALJ denied benefits

20   on the ground that, even with her impairments, Franklin was able to perform other work

21   subject to the limitations reflected in her RFC.  AR 24.  The ALJ further determined that the

22   evidence in the record "strongly suggests" that her psychological impairments would have

23   negligible limitations if she stopped taking marijuana and consistently complied with

24   medical treatment.  AR 23.  This finding sets forth a specific, clear and convincing reason

25   for the ALJ's credibility assessment.

26        **4.     Improvements**

27        A fourth reason given by the ALJ in discounting Franklin's credibility was the

28   substantial evidence of Franklin's improvements.  In particular, the ALJ noted that Hanan

United States District Court

For the Northern District of California

1   found that "when [Franklin] takes her medication, she picks fewer fights."  AR 19, AR 215.

2   The ALJ also noted Hanan's testimony that "[Franklin's] condition had gotten better since

3   June 2009," discrediting Franklin's testimony that "she could not work because she is

4   unable to function."  AR 21.  With respect to Franklin's physical impairments, the ALJ noted

5   that Franklin's physical therapy reports showed that she reported on March 19, 2010 that

6   she "'felt better' and had taken her bike out for a ride," then on April 7, 2010, reported

7   "feeling better overall."  AR 21 (citing 422-23).  Franklin contends that the evidence about

8   her physical impairments is not relevant to the ALJ's findings as to her mental impairments.

9   Pl's Reply at 9.  The ALJ did, however, refer to these records in assessing Franklin's

10  overall credibility.  AR 21.

11  These observations in the record, as well as the ALJ's citation to Hanan's testimony

12  that "medications and therapy helped with the claimant's anger," support the ALJ's finding

13  that Franklin's impairments are not disabling and that "the claimant's statements

14  concerning the intensity, persistence and limiting effects of these symptoms are not

15  credible to the extent that they are inconsistent with the above residual functional capacity

16  assessment."  AR 21, 23.

17  **5.    Medical Treatment Not Consistent With Being Totally Disabled**

18  Fifth, the ALJ found that "the claimant has not generally received the type of medical

19  treatment one would expect for a totally disabled individual."  AR 23.  Franklin argues that

20  "the ALJ is not qualified to substitute his opinion of appropriate treatment for that of the

21  treating physician."  Pl's Mot. at 18-19.  The ALJ found, however, that "[t]he record really

22  does not contain any opinions from treating physicians indicating that the claimant is

23  disabled or even has limitations greater than those determined in this decision."  AR 23.

24  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ's credibility determination

25  was supported by substantial evidence where medical records were not "the sort of

26  description and recommendations one would expect to accompany a finding that [the

27  claimant] was totally disabled under the Act.").

28

1    On this record, the ALJ gave specific reasons for discounting Franklin's subjective

2    complaints which were supported by substantial evidence in the record.

3    **D.    Lay witness testimony**

4    Franklin contends that the ALJ erred by failing to address the complete testimony of

5    her mother, Heather Ann Hanan. Pl's Mot. at 16. Franklin states that the ALJ noted

6    several comments made by Franklin's mother, but "[did] not address the lay witness' more

7    specific testimony regarding the limitations Ms. Franklin continues to have." Id.

8    The ALJ must take into consideration the lay witness testimony regarding a

9    claimant's symptoms or impairments, which "cannot be disregarded without comment."

10   Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (quoting Nguyen v. Chater, 100 F.3d

11   1462, 1467 (9th Cir. 1996)). An ALJ "'must give reasons that are germane to each

12   witness,'" but is not required "to discuss every witness's testimony on a individualized,

13   witness-by-witness basis." Id. (quoting Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993)).

14   Accordingly, if an ALJ cites germane reasons for rejecting the testimony of one witness, the

15   ALJ need only point to those reasons when rejecting similar testimony by a different

16   witness. Id. (citing Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir.

17   2009)).

18   In Molina, the court held that "if an ALJ has provided well-supported grounds for

19   rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning

20   and reverse the agency merely because the ALJ did not expressly discredit each witness

21   who described the same limitations. Further, where the ALJ rejects a witness' testimony

22   without providing germane reasons, but has already provided germane reasons for

23   rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not

24   'clearly link his determination to those reasons.'" 674 F.3d at 1121. Where the ALJ gave

25   reasons for rejecting the claimant's testimony regarding her symptoms that were equally

26   relevant to the similar testimony of lay witnesses, and that would support a finding that the

27   lay testimony was similarly not credible, the court held that the ALJ's failure to comment

28

**United States District Court**
For the Northern District of California

1   upon the lay testimony, either individually or in the aggregate, was harmless error. Id. at

2   1115, 1122.

3          Here, the ALJ opinion discussed Hanan's testimony on several occasions but did not

4   discuss his reasons for discrediting Hanan's testimony. According to the ALJ, "Mrs. Hanan

5   stated that the claimant's condition had gotten better since June 2009." AR 21. Overall,

6   the ALJ found that Hanan's testimony, in combination with Franklin's own testimony,

7   demonstrated improvement in Franklin's condition. AR 23 ("The claimant's testimony, as

8   well as that of her mother's, tends to show improvement . . . ."). As Franklin herself

9   concedes, her mother's testimony is "generally consistent with Plaintiff's own reports and

10  testimony" that she cannot perform work activity on a regular and continuous basis. Pl's

11  Mot. at 3-4, 17. Franklin argues that if Hanan's testimony were fully credited, a reasonable

12  ALJ would have found that Franklin is "unable to sustain work or handle stresses of

13  competitive employment." Pl's Reply at 10.

14         The ALJ provided specific, clear and convincing reasons for discounting Franklin's

15  testimony, as discussed above. The ALJ's failure to give specific reasons for rejecting

16  Hanan's testimony, which did not describe any limitations beyond those that Franklin

17  herself described, did not alter the ultimate nondisability determination. Under Molina, the

18  ALJ is not required to state specific reasons for rejecting the testimony of a lay witness, if

19  the same reasons were used to reject the testimony of another witness. Molina, 674 F.3d

20  at 1122. Thus, the ALJ's error in failing to explain his reasons for rejecting Hanan's

21  testimony was harmless.

22  **E.      RFC Finding**

23         Franklin contends that the ALJ's RFC finding failed to incorporate all of Franklin's

24  limitations, and that the VE's opinion had no evidentiary value because the ALJ's vocational

25  hypothetical failed to include the functional limitations assessed by Drs. Zipperle and

26  Seiver, and as established by Franklin's own testimony and the lay witness testimony. Pl's

27  Mot. at 23.

28

United States District Court

For the Northern District of California

1   At step five, the ALJ consulted the VE to determine Franklin's occupational base.  In

2   eliciting the VE's testimony regarding Franklin's ability to perform other work, the ALJ

3   posed a hypothetical to the VE, i.e., whether a person with Franklin's age, education, work

4   experience and RFC could perform work that existed in significant numbers in the national

5   economy.  AR 24.

6   If an ALJ calls upon a VE to testify at a hearing, the ALJ "poses hypothetical

7   questions to the [VE] that 'set out all of the claimant's impairments' for the [VE's]

8   consideration."  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (citing Gamer v.

9   Secretary of Health and Human Servs., 815 F.2d 1275, 1279 (9th Cir. 1987)).  The ALJ's

10  hypothetical questions must depict the claimant's impairments and limitations, and must be

11  supported by the record.  Id.  See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the

12  burden of showing that an error is harmful normally falls upon the party attacking the

13  agency's determination"); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) ("the burden

14  is on the party attacking the agency's determination to show that prejudice resulted from

15  the error").

16  Franklin's challenge to the ALJ's RFC findings and the VE's testimony lacks merit.

17  Franklin's arguments are based on her other challenges to the ALJ's findings, but, as the

18  court has determined, substantial evidence supports the ALJ determinations to give limited

19  weight to the opinions of Drs. Zipperle and Seiver and to discount the testimonies of

20  Franklin and her mother.  The ALJ did not, therefore, err in posing the hypothetical to VE,

21  because it incorporated all the limitations that the ALJ found to be supported by the record.

22  Tackett, 180 F.3d at 1101.  Because the ALJ's RFC findings were supported by substantial

23  evidence in the record, Franklin has failed to satisfy her burden of showing that the ALJ

24  committed error.

25  **F.    Franklin's Request for Remand for Payment of Benefits**

26  Because the court affirms the Commissioner's finding that Franklin is not disabled,

27  the court does not reach the question whether the case should be remanded for further

28  proceedings or for an award of benefits.

26

**CONCLUSION**

For the foregoing reasons, Franklin's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.  The Commissioner's decision to deny benefits is AFFIRMED.  This order fully adjudicates the motions listed as docket numbers twenty-two and twenty-six, and terminates all pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  August 13, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California